## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CYNTHIA LYNN JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-1086-P |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. For the following reasons, Defendant's decision is affirmed.

I.    <u>Administrative History and Agency Decision</u>

Plaintiff protectively filed her application for supplemental security income on August 20, 2019, alleging disability began on the same date. AR 15. The claim was denied initially and on reconsideration. Plaintiff and a vocational expert ("VE") appeared and testified at a telephonic hearing before an Administrative Law Judge

("ALJ") on October 19, 2020. AR 29-54. The ALJ issued an unfavorable decision on February 3, 2021. AR 12-23.

Following the agency's well-established sequential evaluation procedure, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 20, 2019, the application and alleged onset disability date. AR 17. At the second step, the ALJ found Plaintiff had the following severe impairments: dysfunction of the major joints, a depression disorder, and arthroscopy of the left shoulder. *Id.* At the third step, the ALJ found Plaintiff's impairments were not *per se* disabling as Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the requirements of a listed impairment. *Id.*

At step four, the ALJ found Plaintiff had the residual functional capacity to perform a full range of light work, except that Plaintiff could only occasionally use her right upper extremity for overhead reaching. AR 18-19. Additionally, Plaintiff's work must be limited to simple, routine, repetitive tasks. AR 19.

At step five, the ALJ, relying on the VE's testimony, determined Plaintiff could not perform her past relevant work. AR 22. Continuing to rely on the VE's testimony, the ALJ further concluded that Plaintiff could perform the following jobs existing in significant numbers in the national economy: merchandise marker, routing clerk, and cafeteria attendant. AR 22-23. As a result, the ALJ concluded

Plaintiff had not been under a disability, as defined by the Social Security Act, from August 20, 2019 through the date of the decision. AR 23.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 404.981; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

II.   Standard of Review

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401, *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last no less than twelve months. *Barnhart v. Walton*, 535 U.S. 212 (2002).

The Court must determine whether Defendant's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, ___ U.S.___, 139 S. Ct. 1148, 1154 (2019). Substantial evidence

"means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted).

The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation, quotations, and alteration omitted). The Court must also be mindful that reviewing courts may not create post-hoc rationalizations to explain Defendant's treatment of evidence when that treatment is not apparent from the decision itself. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (citing, *e.g., Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

III.   Issue

Plaintiff contends the ALJ erred in analyzing the consistency factor when considering the medical opinions of Dr. Janita Ardis and Dr. Jessica Plumley. Doc. No. 14 ("Op. Br.") at 3-9.

IV.   Analysis

Plaintiff challenges the ALJ's consideration of the medical opinions provided by Dr. Ardis, a treating psychiatrist, and Dr. Plumley, a consultative examiner.[1] An

---

[1] The record contains two additional medical opinions, Drs. Deanna Gallavan and Debby Doughty, pertaining to Plaintiff's mental health limitations. AR 86-89, 109-11. The ALJ

ALJ must consider five factors in determining whether a medical opinion is persuasive. 20 C.F.R. § 416.920c(c)(1)-(5). Those factors are supportability, consistency, relationship with the claimant, specialization, and other factors. *Id.* Previously, an ALJ gave special consideration to the medical source's relationship to the plaintiff—the third factor. *E.g., Silva v. Saul*, No. 19-913 WJ/KK, 2020 WL 4220862, at *4 (D.N.M. July 23, 2020); *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). The current regulations, however, provide that the factors of supportability and consistency are "[t]he most important factors" in considering "the persuasiveness of medical opinions and prior administrative findings." 20 C.F.R. Section 416.920c(a). In determining the persuasiveness of opinions and findings, an ALJ must explain how she considered the supportability and consistency factors but is not required to explain how she considered the remaining factors. 20 C.F.R. Section 416.920c(b)(2).

On October 24, 2019, Dr. Plumley conducted a consultative psychological evaluation of Plaintiff. AR 365-69. Dr. Plumley noted Plaintiff was pleasant in interaction, maintained good eye contact, did not demonstrate evidence of psychomotor agitation or retardation, and was oriented to person, place, time, and situation. AR 365. Plaintiff presented in a low mood but with an affect that was

---

concluded these opinions were not persuasive because "[s]ignificant additional medical evidence was received after these opinions were entered." AR 21. Plaintiff does not challenge the ALJ's conclusion regarding these two opinions. Op. Br. at 3 n.1.

appropriate to topic, appearing teary at times, and her energy level was adequate. *Id.* Plaintiff denied any suicidal ideation. *Id.* She provided detailed responses, demonstrated functionable language skills, normal thought content, and logical, coherent, and goal directed thought processes. *Id.* Plaintiff's long and short term memory appeared intact, she demonstrated a good ability to sustain goal directed attention and adequate insight, and evidenced proper judgment. AR 365-66.

Plaintiff reported that she had been prescribed medications for emotional reasons but was unsure what, if any, diagnoses she had received. AR 367. She also reported that she had never participated in therapy but "feels that she needs to start that process." *Id.* Plaintiff stated that she started experiencing depression approximately three years prior as a result of ongoing medical issues and reduced ability to perform certain functions. *Id.* "She endorsed a loss of interest and enjoyment in things, irritability, feelings of worthlessness, isolating, significant lack of motivation and helplessness." *Id.* Plaintiff explained that her ex-husband ran over her with a vehicle in 2010, resulting in extremely serious injuries. *Id.* She stated that she has nightmares about this incident 4-5 times per week, experiences extreme anxiety especially in parking lots and watching cars, avoids driving, and avoids the town where it occurred. *Id.* Plaintiff also reported terrible memory, including having to write everything down, forgetting recent conversations, experiencing difficulty finding words, and if distracted, forgetting the task she was doing. AR 366-67.

Plaintiff stated that she will not drive alone more than five to ten miles away from her house. AR 367. She explained that her daily routine involves getting up around 8:15 a.m., feeding her dog, checking on her horses, returning to her house, and lying down the remainder of the day. *Id.* Plaintiff usually goes to bed between 7:00 p.m. and 9:00 p.m. but is awake throughout the night to difficulty staying asleep. *Id.*

Following the evaluation, Dr. Plumley set forth the following opinion:

[I]t is likely Ms. Jones will struggle with completing tasks with more complex instructions that require her to follow multiple-step processes. She is also likely to struggle with understanding and completing tasks that are more cognitively demanding or abstract in nature, such as those requiring judgment and abstract reasoning abilities. This could lead to failure to follow through with completing tasks if not in a highly supervised environment. This can also negatively impact her production efficiency and capacity to keep up with peers. Based on her significant depression, anxiety, and sleep disturbances, she is likely to display reduced motivation and fatigue, which could also interfere with her ability to adequately keep up with the expected pace and work demands in general. Ms. Jones was pleasant in interaction and appeared to possess the capacity to get along well with others. However, she endorsed irritability and a tendency to isolate. She may therefore fare better in positions with limited interactions with others. . . . If awarded Social Security disability benefits, Ms. Jones may require assistance in managing funds given cognitive problems and severe mental health problems interfering with daily functioning. Her husband manages finances at this time.

AR 368-69.

In considering Dr. Plumley's opinion, the ALJ concluded that it was not persuasive. AR 21. The ALJ explained her reasoning as follows, "The claimant's

psychiatric treatment had been minimal and findings upon mental status examination have been mostly negative. In fact, this consultative examination was overwhelming[ly] negative, with only a few *objective* positive findings." *Id.* (emphasis added).

In reviewing Dr. Plumley's examination as a whole, one may surmise that she based the majority of her opinion on Plaintiff's subjective reports regarding her symptoms and conditions, rather than Dr. Plumley's own objective findings and observations. In this regard, Dr. Plumley specifically found that Plaintiff "appeared honest and forthcoming" and "[t]his evaluation is deemed to be a valid assessment of Ms. Jones's current functioning." AR 365. In evaluating Dr. Plumley's opinion, the ALJ discussed only Dr. Plumley's objective findings, and did not address or apparently consider Plaintiff's subjective reports during the examination. AR 20-21.

On August 14, 2020, almost one year after Dr. Plumley's consultative examination, Plaintiff began psychiatric treatment with Dr. Ardis. During Plaintiff's initial evaluation, Dr. Ardis noted various objective findings. Plaintiff was neatly dressed and had good personal hygiene, her facial expression indicated anger and she displayed psychomotor agitation, she was alert, oriented to time and place, cooperative but guarded, had a flat but irritable affect, her speech was logical, and her motor activity and attention span were normal. AR 488-89. Plaintiff was not suicidal, nor was she experiencing hallucinations, feelings of unreality, or illusions,

but she was paranoid. AR 489-90. Plaintiff's thought process was goal directed, memory was "on," and she had normal intellect, judgment, and insight level. AR 490. Plaintiff was able to realize her need for treatment and wanted "to get better." AR 491.

Dr. Ardis also noted Plaintiff's subjective reports. Specifically, Plaintiff reported that she suffers from depression, anxiety, and decreased focus. AR 484. She explained that since the 2010 accident, she has not been employed, experiences recurring nightmares, worsening depression, she no longer drives herself, has had ten orthopedic surgeries and is due for another, has no interest in doing anything, and stated, "I'm not the same person." AR 484, 486, 487

Dr. Ardis diagnosed Plaintiff with depression, possible bipolar, anxiety, post-traumatic stress disorder ("PTSD"), and possible attention deficit disorder ("ADD"). AR 492. Dr. Ardis noted Plaintiff was experiencing problems with depression, mood, anxiety, and PTSD and explained that she based those conclusions on her discussion with Plaintiff. AR 492-93.

On October 8, 2020, Dr. Ardis again saw Plaintiff. AR 504-06. Dr. Ardis's objective findings were relatively normal. Plaintiff had appropriate and neat appearance, speech and thought processes were normal, her description of associations were intact, her judgment and insight were good, she was oriented to

time and place, and engaged and cooperative, though anxious. AR 505. Dr. Ardis

also noted something pertaining to incapacity but it is illegible. *Id.*

Dr. Ardis diagnosed Plaintiff with bipolar depression, anxiety, PTSD, and

ADD. AR 506. She stated that Plaintiff's problems/conditions included mood with

"some improvement on medication but ongoing" and ongoing "incapacity." *Id.*[2] Dr.

Ardis indicated Plaintiff's medication should stay the same, except that Adderal

would be increased. *Id.*

Dr. Ardis issued a "Medical Source Statement of Ability to do Work-Related

Activities (Mental)." AR 498-500.[3] Dr. Ardis indicated Plaintiff had a slight

limitation in her ability to understand and remember short, simple instructions and a

moderate limitation in her ability to carry out short, simple instructions and interact

appropriately with the public. AR 498-99. Further, Dr. Ardis found Plaintiff had a

marked limitation in her ability to understand and remember detailed instructions,

---

[2] Dr. Ardis included an additional problem/condition that she indicated was ongoing, but the problem/condition is illegible. *Id.*

[3] The date on which Dr. Ardis issued this opinion is a matter of some confusion. The opinion is clearly dated August 10, 2022. AR 500. In her decision, the ALJ referred to the opinion as having been completed on October 8, 2020, but did not indicate her basis for the same. AR 21. Plaintiff does not address the opinion's date, while Defendant states, "Dr. Ardis completed a questionnaire on Plaintiff's functioning in August 2022, though there are no records suggesting Plaintiff saw [her] since the October 2020 visit." Doc. No. 16 at 6. Although it is currently June 2022, Defendant does not address the impossibility of an opinion having been completed in August 2022. Nevertheless, because the bottom of each opinion page indicates Dr. Ardis faxed it on October 13, 2020, the Court will presume Dr. Ardis issued the opinion in October 2020.

carry out detailed instructions, make judgments on simple work-related decisions, and interact appropriately with supervisors and coworkers. *Id.* Finally, she found Plaintiff had an extreme limitation in her ability to respond appropriately to work pressures and changes in a routine or usual work setting. AR 499.

As with Dr. Plumley's opinion, the ALJ concluded Dr. Ardis' opinion was not persuasive. AR 21. She stated, "The claimant's psychiatric treatment had been minimal and findings upon mental status examination have been mostly negative. In fact, the findings of this examiner upon mental status examination were overwhelming[ly] negative, with only a few *objective* positive findings." *Id.* (emphasis added).

Also similar to Dr. Plumley's opinion, in reviewing Dr. Ardis's treatment records as a whole, one may surmise that she based the majority of her opinion not on her objective observations but on Plaintiff's subjective reports. In evaluating Dr. Ardis's opinion, the ALJ discussed only Dr. Ardis's objective observations during treatment, and did not address or apparently consider Plaintiff's subjective reports during treatment. AR 21.[4]

---

[4] The Court notes that on appeal, Plaintiff does not challenge the ALJ's reliance on Drs. Ardis and Plumley's objective findings while ignoring Plaintiff's subjective reports. Accordingly, Plaintiff has waived this argument. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012); *cf., Murrell v. Shalala*, 43 F.3d 1388, 1390 n.2 (10th Cir. 1994).

Plaintiff argues the ALJ erred in her evaluation of Dr. Ardis and Dr. Plumley's opinions on two bases. First, Plaintiff takes issue with the ALJ's consideration of the extent to which Plaintiff had pursued and/or received psychiatric treatment. Op. Br. at 5-6. Plaintiff argues,

> [The] amount of treatment or lack thereof is not the test for any severe impairment in the SSA rules and regulations. Further, attempting to require treatment as a precondition for disability would clearly undermine the use of consultative examinations. Thus, the ALJ failed to follow the regulations in reaching her determination about whatever she believed was or was not a severe impairment. That requirement by this ALJ is prohibited in this Circuit.

Op. Br. at 6 (citation omitted).

The primary problem with Plaintiff's argument arises from her apparent confusion regarding permissible considerations at the second and fourth steps of the sequential evaluation. It is well established that an ALJ cannot consider lack of treatment at step two in determining whether an impairment is severe and/or exists. *See Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (holding that an ALJ errs when relying on lack of treatment for a mental impairment to determine the impairment is not severe at step two, stating, "[T]he regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of *treatment* received by a claimant does not play a role in that determination.").

By contrast, however, lack of medical treatment is "fair game" for consideration at step four. *Torres v. Kijakazi*, No. 20-440 SCY, 2021 WL 4307201, at *8 (D.N.M. Sept. 22, 2021).

> The regulations that govern step four are different [from those of step two] and . . . have recently changed. Under the current applicable regulations, when considering medical source opinion, supportability and consistency are of paramount importance. And, when considering supportability and consistency, the ALJ must consider the entire record. If a claimant alleges a disability for which a person would normally seek treatment, but for which the claimant did not, this evidence is at least relevant (even though it may not be conclusive). In other words, lack of treatment is but one portion of the overall record to be considered and that could help support or undermine a medical source's opinion. Thus, the Court agrees with the Commissioner's argument that Mr. Torres's lack of treatment history is fair game for evaluating whether a medical source opinion is consistent with the other evidence in the record.

*Id.*; *see also Casas v. Saul,* No. 1:19-CV-01154-KRS, 2021 WL 107244, at *6 (D.N.M. Jan. 12, 2021) ("In assessing the consistency of the [consultative examiner]'s opinions with th[e] record, the ALJ was permitted to consider the fact that Plaintiff had not previously sought treatment from a mental health professional."); *Price v. Berryhill*, No. CIV–16–079–KEW, 2017 WL 4232957, at *4 (E.D. Okla. Sept. 25, 2017) (noting that an ALJ can consider lack of treatment in evaluating medical opinions in the record); *Harman v. Colvin*, No. 14-cv-00349-KLM, 2015 WL 5693559, at *7-8 (D. Colo. Sept. 29, 2015) (affirming the ALJ's decision to reject an expert medical opinion because it was inconsistent with the plaintiff's overall lack of medical treatment).

The ALJ determined at step two of the sequential evaluation process that Plaintiff suffered from a severe depression disorder. AR 17. Thus, she clearly did not require treatment in order to determine that Plaintiff's mental health impairment was severe. More significantly, the ALJ's consideration of Plaintiff's lack of treatment was proper at step four in evaluating medical opinions.

In Plaintiff's second challenge to the ALJ's consideration of the medical opinions, Plaintiff contends the ALJ erred by "exclud[ing] each opinion in her analysis of the other opinion." Op. Br. at 5. Put somewhat more clearly, "in analyzing the opinions of Dr[]. Ardis and Dr. Plumley for their persuasiveness, the ALJ never contemplates the fact that these two opinions are consistent with each other, which violates 20 C.F.R. § [416.980]c(a)-(c)." *Id.* at 6. The Court disagrees.

As previously explained, the factors an ALJ must consider are supportability, consistency, relationship with the claimant, specialization, and other factors in evaluating whether a medical opinion is persuasive. 20 C.F.R. § 416.920c(c)(1)-(5). Of those considerations, supportability and consistency are the most important and the ALJ must discuss them in his decision. 20 C.F.R. § 416.920c(a), (b)(2). With regard to supportability, the regulation explains, "The more relevant the *objective* medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will

be." 20 C.F.R. § 416.920c(2)(1) (emphasis added). Similarly, regarding consistency, the regulation provides, "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. Section 416.920c(c)(2).

Here, Plaintiff contends the ALJ erred in her required discussion of consistency because she did not address the fact that the opinions of Drs. Ardis and Plumley were similar. If an ALJ was only required to consider consistency, Plaintiff's argument *might* be more availing. However, the regulation indicates consistency and supportability are equally important. In considering supportability, the ALJ specifically found that neither opinion was supported by the respective doctor's objective findings, and the record supports the ALJ's conclusion in this regard. AR 20-21, 365-69, 484, 486-93, 498-500, 504-06. In evaluating the opinions' consistency, the ALJ considered Plaintiff's lack of psychiatric treatment over the course of the record. *Id.* at 20-21. Plaintiff's lack of treatment is also supported by the record as she consistently reported that she did not seek such treatment until she saw Dr. Ardis in August 2020, one year after her alleged disability onset date. Moreover, case law clearly provides that an ALJ may consider lack of treatment when evaluating the consistency of a medical opinion. *See, supra.*

Plaintiff has not cited to any case law requiring an ALJ, when evaluating the consistency of a medical opinion, to consider the similarities between two medical opinions where the ALJ has determined that the opinions are not well supported by their own objective findings and are inconsistent with the remainder of the record. *See, cf., Nicholas P.S. v. Saul*, No. 20-2360-JWL, 2021 WL 2711172, at *6 (D. Kan. July 1, 2021) ("[U]nder the new regulations the ALJ is not to consider the weight of the opinions relative to each other but must articulate how persuasive he finds each opinion to be."). As required under 20 C.F.R. § 416.920c, the ALJ clearly considered both supportability and consistency in evaluating Drs. Ardis and Plumley's opinions and discussed the same in her decision. Accordingly, the Court finds Plaintiff's assertion of error is without merit.

V.   Conclusion

Based on the foregoing analysis, the decision of Defendant is affirmed. Judgment will issue accordingly.

ENTERED this   10th   day of June, 2022.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE